UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

THE CINCINNATI INSURANCE
COMPANY,

                Plaintiff,                        Case No.  2:11-CV-187

v.

                                                 HON. GORDON J. QUIST

ENGINEERED MACHINED PRODUCTS,
INC. EMPLOYEE BENEFIT PLAN,

                Defendant.

_____/

## OPINION

       This case involves an insurance coverage dispute between two insurers–Cincinnati Insurance Company (Cincinnati), a Michigan no-fault insurer, and Engineered Machined Products, Inc. Employee Benefit Plan (the Plan) an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001, *et seq.*  The question is which insurer is responsible for the medical expenses of non-parties Lisa and Ashley Hough.

       Cincinnati initially filed a complaint for declaratory relief in the Saginaw County Circuit Court against Blue Cross Blue Shield of Michigan (BCBSM) seeking a declaration that the coordination of benefits (COB) clause in the Hough's no-fault insurance policy issued by Cincinnati renders Cincinnati secondarily liable for their medical expenses.  Cincinnati thereafter filed an amended complaint naming the Plan as a defendant, and the Plan removed the case to this Court, citing ERISA as the basis for removal jurisdiction.  Following removal, the parties stipulated to dismiss BCBSM.  (Dkt. #31.)

Cincinnati and the Plan have filed cross-motions for summary judgment.  In its motion, Cincinnati contends that, although coverage disputes between a no-fault insurer and an ERISA plan based on conflicting COB provisions are normally resolved in favor of the ERISA plan, the Plan has primary responsibility for payment of the Houghs' medical expenses because the Plan contains two conflicting COB provisions, resulting in an ambiguity that must be construed against the Plan.  The Plan counters that it is entitled to summary judgment because the Plan excludes coverage for the Houghs' medical expenses and the COB provisions are, therefore, irrelevant.  It further argues, however, that if coverage exists, the Plan's COB provision renders its coverage secondary when the medical expenses arise from accidental bodily injury.

Because, as explained below, the Plan excludes coverage for the Houghs' injuries, the Court will deny Cincinnati's motion for summary judgment and grant the Plan's motion for summary judgment.[1]

## I. BACKGROUND

### A.  Underlying Facts

On October 9, 2010, Lisa and Ashley Hough were injured in an automobile accident near Gladstone, Michigan, and required medical treatment.  Lisa was married to Joseph Hough ; Ashley was Joseph's daughter.  At the time of the accident, the Houghs were insured under a no-fault automobile insurance policy (the Policy) issued by Cincinnati.  Joseph Hough was also covered under a group health insurance plan through his employer, Engineered Machine Products, Inc.  The Plan is a self-funded employee welfare benefit plan subject to ERISA.  Lisa and Ashley were also covered by the Plan as dependents of Joseph Hough.

---

[1] Although both parties have requested oral argument, having reviewed the submitted materials, the Court concludes that oral argument would not assist the Court in deciding the motions.

2

Following the accident, Cincinnati paid for most of the medical expenses incurred by the Houghs.  BCBSM, on behalf of the Plan, also paid some of the Houghs' medical expenses and notified Cincinnati of its intent to seek reimbursement of those expenses through subrogation. Thereafter, Cincinnati filed the instant action seeking a declaration that the Plan has primarily liability for the Houghs' expenses.

### B.     Relevant Policy Provision

As authorized by M.C.L.A. § 500.3109a, the Policy contains a COB clause, which provides:

B.       "We" do not provide Personal Injury Protection Coverage for:

  1.     Medical expenses for "you" or any "family member":

  a.     To the extent that similar benefits are paid or payable under any other insurance, service, benefit or reimbursement plan (excluding Medicare benefits provided by the Federal Government); and

  b.     If Coordination of Benefits for medical expenses is indicated in the Schedule or Declarations.

(Policy at 4-5, Pl.'s Br. Supp. Ex. 1.)  Section 3109a of Michigan's No-Fault Act requires no-fault insurers to offer, at reduced premiums, insurance coverage that coordinates with other insurance that their insureds may have.  *See Transamerica Ins. Co. of N. Am. v. Peerless Indus. (MASCO)*, 698 F. Supp. 1350, 1351 (W.D. Mich. 1998).  Michigan courts have held that when a no-fault insurance policy and a health insurance policy contain COB clauses, absent an exclusion of coverage by the health insurance policy, the No-Fault Act requires that the health insurance carrier be primarily liable for the insured's  medical expenses arising from an automobile accident.  *Auto-Owners v. Autodie Corp. Emp. Benefit Plan*, 185 Mich. App. 472, 474, 463 N.W.2d 149, 150 (1990) (per curiam).

3

### C.     Relevant Plan Provisions

Three separate provisions or clauses of the Plan are at issue.  First, the exclusions section

contains the following provision with respect to motor vehicle accidents:

> 30.     **Motor Vehicle Accidents** - Charges incurred due to injuries received in an accident involving any motor vehicle for which there is in effect, or is required to be in effect, any policy of no-fault insurance.  This exclusion is not applicable to expenses not paid by any required policy as a result of state required policy deductibles or maximums.

(Plan Art. III, § A.2.c., ¶ 30, Def.'s Br. Supp. Mot. Ex. B.)  Second, with regard to the Plan's

subrogation rights, the following language is set forth under "Exclusion of Benefits and

Assignment":

> Benefits are not payable for injury (ies) or illness (es) to you or your dependent to which a third party (ies) may have caused or contributed.  However, the Plan may elect, in its sole discretion, to advance payments for medical expenses incurred for any injury (ies) or illness (es) to you or your Dependents to which a third party (ies) may have caused or contributed. . . .

(*Id.* Art. IV, § D.1.)  Finally, the Plan contains an extensive COB provision.  Relevant portions of

the COB provide:

### IV.     DUPLICATION OF BENEFITS

#### A.     COORDINATION OF BENEFITS

Benefits provided under this Plan are subject to this Coordination of Benefits (COB) provision.  This Provision shall apply to all benefits provided under this Plan, except for benefits provided under a Prescription Drug Card Benefit of this or any other Plan.

The intent of COB is to avoid a duplication of benefits when an individual has coverage under more than one Plan.  In such an instance, the two (or more) Plans will determine between them which Plan will provide benefits on a "primary" basis and which Plan will provide benefits on a "secondary" basis.

##### 1.     DEFINITIONS

a.     The term "Plan" as used in this provision refers to any Plan, policy or coverage providing benefits or services for or by reason of health, medical,

4

dental or vision care or treatment.   Such Plans may include, without limitation:

    (1)    Group coverage, whether insured or uninsured, including but not limited to hospital indemnity benefits and hospital reimbursement type Plans;

    (2)    Blue Cross and Blue Shield group coverage and other group pre-payment Plans;

    (3)    labor/management trustee Plans, union welfare Plans, employer organization Plans, and employee benefit organization Plans;

    (4)    Coverage under governmental programs or any coverage required by statute, excluding Medicaid;

    (5)    Group or individual automobile insurance.

. . . .

## 2.    WHEN THIS PLAN IS SECONDARY

a)    This Provision shall apply in determining the benefits as to a Covered Person under this Plan for any Claim Determination Period if, for the Allowable Expenses incurred as to such Covered Person during such period, the sum of:

    (1)    the benefits that would be payable under this Plan in the absence of this provision; and

    (2)    the benefits that would be payable under all other plans in the absence therein of provisions of similar purpose to this provision would exceed the amount payable under this Plan in the absence of other insurance.

b)    Non-Duplication of Coverage-
When coordination of benefits is applicable, benefits will be determined as follows:

    1st-    The amount payable under this plan is determined.
    2nd-    The amount paid by the primary plan is determined.
    3rd-    The amount paid by the primary plan is subtracted from the amount payable under this plan.

Example:

|  | This Plan | Primary Plan |
|---|---|---|
| Charge- | $500 | $500 |
| Deductible | -$300 | -$400 |
| Balance | $200 | $100 |
| x | 80% | 80% |
|  | $160 | $ 80 |

$160-$80 = $80.00    Benefit Payable

### 3.    ORDER OF BENEFIT DETERMINATION

a)     If:

(1)     another Plan which is involved in item (b) if this subsection 2. and which contains a provision coordinating its benefits with those of this Plan would, according to its rules, determine its benefits after the benefits of this Plan have been determined, and

(2)     the rules set forth in item (d) of this subsection 2 would require this Plan to determine its benefits before such other Plan,

then the benefits of such other Plan will be ignored for the purposes of determining the benefits under this Plan.

b)     For the purposes of item (c) of this subsection 2., the rules establishing the order of benefit determination are:

. . . .

d)     When a covered person incurs charges which result from accidental bodily injury, this plan will be secondary to any other insurance policies or reimbursement plans.

(*Id.* Art. IV, § A.)[2]

## II. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).

At the outset, the Court notes that the Plan makes several arguments that border on frivolous, which are incorrect and unhelpful to the resolution of this case.[3]

----

[2]Cincinnati's amended complaint and its instant motion relied on a former version of the COB, which was amended effective January 1, 2007.  In its subsequent briefing, Cincinnati conceded that it had initially cited the incorrect version of the COB provision, although it still maintains that the Policy's coverage is subordinated to the Plan's coverage even considering the amendments to the COB.

[3]The following are two examples of the Plan's incorrect and unhelpful arguments.  First, the Plan devotes a great deal of time suggesting that Cincinnati is attempting to mislead the Court by using insurance-related terms when referring to the Plan.  This criticism is unfounded.  While it is true that ERISA plans are not considered insurance for purposes of ERISA's "deemer clause," 29 U.S.C. § 1144(b)(2); *see also FMC Corp. v. Holliday*, 498 U.S. 52, 111 S. Ct. 403 (1990), the Plan ignores numerous decisions from the Sixth Circuit and district courts within the Sixth Circuit characterizing benefits under ERISA welfare plans as "insurance" and describing cases such as this as a priority dispute between two insurers.  *See, e.g., Citizens Ins. Co. of Am. v. MidMichigan Health Connectcare Network Plan*, 449 F.3d 668, 690 (6th Cir. 2006) ("The plan provides *health insurance benefits* to the employees of MidMichigan Medical Center." (italics added)); *Am. Med. Sec., Inc. v. Auto Club Ins. Ass'n of Mich.*, 238 F.3d 743, 746 (6th Cir. 2001) ("This case involves a dispute over which of two potential *insurance* providers–Plaintiff, . . . the third-party administrator of ERISA-governed employee welfare benefit plans; or Defendant, . . . a Michigan no-fault automobile insurer–is responsible for the payment of medical expenses . . . ." (italics added)); *Primax Recoveries v. State Farm Mut.*, 147 F.

6

As noted above, the issues raised in the instant motions are: (1) whether the Plan excludes coverage for the Houghs' medical expenses; and (2), if not, whether Cincinnati or the Plan is primarily liable for the Houghs' medical expenses.  With regard to these issues, certain facts and legal principles are not in dispute.  First, the parties agree (or at least Cincinnati does not dispute) that the Plan is a self-funded ERISA plan.  Second, the parties acknowledge that ERISA preempts Cincinnati's state law claims, including its reliance on M.C.L.A. § 500.3109a to the extent the Court might consider the COB provisions.  *See Auto Owners v. Thorn Apple Valley, Inc.*, 31 F.3d 371, 374 (6th Cir. 1994) (noting that ERISA preempts claims based on state insurance law, including claims based on the application of M.C.L.A. § 500.3109a); *Lincoln Mut. Cas. Co. v. Lectron Prods., Inc. Emp. Health Benefit Plan*, 970 F.2d 206, 211 (6th Cir. 1992) (observing that "§ 3109a is preempted by ERISA" but cautioning that preemption "does not necessarily render Lincoln's COB clause void, nor does it necessarily mean that the Plan's terms prevail" (citing *Auto Club Ins. Ass'n v. Health & Welfare Plans, Inc.*, 961 F.2d 588, 593 (6th Cir. 1992))).  Finally, the parties agree that the Court must apply federal common law to resolve the dispute.  *Thorn Apple Valley*, 31 F.3d at 374; *see also Great-West Life & Annuity Ins. Co. v. Allstate Ins. Co.*, 202 F.3d 897, 900 (6th Cir. 2000) (noting that "a dispute between two insurers, one of which qualifies as an employee welfare benefit plan

Supp. 2d 775, 778 (E.D. Mich. 2001) ("This case arises from a coordination of benefits dispute between two *insurers* and requires an analysis of ERISA and whether it preempts in this instance. . . . Defendant is the insured's no-fault carrier and Plaintiff is his employee benefit plan administrator." (italics added)).

Second, the Plan suggests that CIC is either confused or trying to mislead the Court by citing case law having no application to ERISA plans.  But the Plan's assertions are simply wrong.  For example, *University of Michigan v. Employees of Agency Rent-A-Car Hospital Association*, 122 F.3d 336 (6th Cir. 1997),which the Plan says is irrelevant because it involved "the interpretation of an insurance contract between two health insurers and their insureds," (Def.'s Resp. Br. at 6),actually involved two ERISA plans, not two traditional insurers.  The first paragraph of the opinion makes this clear when it states that "[t]his action involves the interpretation of a coordination of benefits clause ("COB") contained in an Employee Retirement Income Security Act ('ERISA') health care plan."  *Agency Rent-A-Car*, 122 F.3d at 338.  In the same paragraph, the court describes the other insurer as "the insolvent primary ERISA insurer."  *Id.*  Thus, contrary to the Plan's representation, principles of insurance contract interpretation *are* applicable to ERISA plans.  *Id.* at 340 ("Thus, the federal common law, to the extent that it has been developed on this issue, and the Michigan law are essentially the same, and application of either leads to the same result.").

under [ERISA]" is governed by "federal common law").

Cincinnati's argument for holding the Plan primarily liable for the Houghs' medical expenses, as the Court understands it, is as follows. First, it contends that the motor vehicle exclusion is not a pure exclusion, but instead is an escape-type COB clause which would ordinarily subordinate the Plan's coverage to Cincinnati's coverage. Second, it notes that the Plan also contains a hopelessly confusing and unworkable formal COB provision. Nonetheless, Cincinnati deciphers this COB provision to mean that if another policy contains a COB provision and the Plan contains no conflicting clauses, the Plan is primary. Finally, Cincinnati contends that because the Plan contains two conflicting COB clauses–one rendering Cincinnati primary and the other rendering the Plan primary–the Plan provisions are ambiguous, requiring that they be construed against the Plan.

*See Regents of the Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997) (stating that "ambiguities in the language of the plan [are to] be construed strictly against the drafter of the plan").

Regardless of the merits of Cincinnati's argument, the Court agrees with Cincinnati that the Plan's COB provision is confusing; in fact, it is a mess. The Court need not address the COB issue, however, because it concludes that the Plan excludes coverage.

As noted, Cincinnati argues that the Plan's motor vehicle exclusion is in fact an escape-type COB clause. Michigan courts define an escape clause as a clause "which provides that there shall be no liability if the risk is covered by other insurance." *Agency Rent-A-Car*, 122 F.3d at 340-41 (citing *NALC Health Benefit Plan v. Lunsford*, 879 F. Supp. 760, 765 (E.D. Mich. 1995)). In comparing exclusions and escape clauses, the Michigan Court of Appeals has stated:

> The phrasing of a purported exclusion conditioning coverage on the existence of other insurance is crucial in determining whether it is actually an exclusion or

merely an escape type provision.  If an exclusion of coverage is stated absolutely in a health insurance policy without reference to other insurance, then it is not conditioned on the existence or nonexistence of other insurance.  Such an exclusion provision qualitatively differs from an escape type coordinated benefits provision that is expressly conditioned on the existence of other insurance.  Such coverage simply does not exist, regardless of the existence of any no-fault benefit.

*Transamerica Ins. Co. of Am. v. IBA Health & Life Assurance Co.*, 190 Mich. App. 190, 194-95, 475 N.W.2d 431, 433 (1991) (citing *Peerless Indus.*, 698 F. Supp. at 1352).  Thus, as the *Transamerica Insurance* court observed, the actual phrasing of a purported exclusion is paramount to the determination of whether it is actually an escape clause.

Cincinnati contends that the motor vehicle exclusion is an escape clause because it excludes benefits if a no-fault policy is in effect:  "[c]harges due to injuries received in an accident involving any motor vehicle for which there is in effect . . . any policy of no-fault insurance."  But Cincinnati's analysis ignores key language.  Coverage is excluded if a no-fault policy is "in effect, *or is required to be in effect* . . . ."  The italicized language allows for the possibility that no-fault coverage does not exist and thus makes clear that coverage is excluded absolutely in no-fault jurisdictions, regardless of the existence or non-existence of a no-fault policy.  Accordingly, the Court concludes that the motor vehicle exclusion is a pure exclusion and not an escape-type COB clause.

The Court further concludes that coverage is excluded under the Plan's "Exclusion of Benefits and Assignment" provision, which provides that "[b]enefits are not payable for injury (ies) or illness (es) to you or your dependent to which a third party (ies) may have caused or contributed."  The Plan has presented evidence that the other driver was at fault in causing the accident and the Houghs' injuries.  (Traffic Crash Report, Def.'s Br. Supp. Mot. Ex. A.)  Cincinnati presents no evidence to the contrary.  Cincinnati asserts only that "[t]hat clause obviously has no application in the present case," (Pl.'s Resp. Br. at 3), but it does not explain why.  The clause applies, however, and this is true even if the motor vehicle exclusion is considered an escape clause, because each

exclusion is to be read independently of other exclusions. *English v. Blue Cross Blue Shield of Mich.*, 263 Mich. App. 449, 471, 688 N.W.2d 523, 537 (2004).

Therefore, because the Plan does not cover the Houghs' medical expenses, the parties' respective COB clauses are irrelevant.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Cincinnati's motion for summary judgment and grant the Plan's motion for summary judgment.

An Order and Judgment consistent with this Opinion will be entered.

Dated:  February 14, 2012                                      _____/s/ Gordon J. Quist_____
                                                                               GORDON J. QUIST
                                                                     UNITED STATES DISTRICT JUDGE